UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------ x
FRANK VANDEVER                 :
                               :
        Plaintiff,             :  Civil No. 3:09-CV-1752(AWT)
                               :
v.                             :
                               :
PETER MURPHY, MARK STRANGE,    :
CAROL CHAPDELAINE, GINO BEAUDRY,:
ED CORL, OFFICER ALLEN, JOHN   :
DOE, and CAPTAIN VANOUDENHOVE, :
                               :
        Defendants.            :
------------------------------ x
```

## MEMORANDUM OPINION

For the reasons set forth below, after a bench trial, the court finds for the remaining defendants, Peter Murphy and Mark Strange.

**I.    BACKGROUND**

The plaintiff, Frank Vandever, brought this action pro se pursuant to 42 U.S.C. § 1983 against Warden Peter Murphy, District Administrator Mark Strange, Major Carol Chapdelaine, Captain Gino Beaudry, Lieutenant Edward Corl, Lieutenant Thomas Allen and Captain Vanoudenhove, alleging that the defendants violated his right of access to courts as guaranteed by the First, Fifth and Sixth Amendments and his right to Due Process and Equal Protection as guaranteed by the Fourteenth Amendment. The plaintiff also alleged that the defendants conspired and

-1-

retaliated against him for making complaints and filing a state habeas petition and maliciously prosecuted him.

After the court's Initial Review Order and the court's ruling on the defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the remaining claims were the First Amendment retaliation claim against defendants Murphy and Strange, and the Equal Protection and Due Process claims against all defendants.

In March 2014, pro bono counsel for appeared the plaintiff. Thereafter, the parties informed the court that they waived a jury trial. Additionally, the plaintiff elected to proceed to trial on only his claim that Murphy and Strange unlawfully retaliated against him while he was incarcerated at MacDougall-Walker Correctional Institution, in violation of his First Amendment right to pursue a habeas action against defendant Strange. Therefore, the Equal Protection and Due Process claims against all defendants were dismissed with prejudice.

## II.  LEGAL STANDARD

"It is well-established that prison officials may not retaliate against inmates for exercising their constitutional rights." Colman v. Vasquez, 142 F. Supp. 2d 226, 239 (D. Conn. 2001) (citing Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995); Franco v. Kelly, 854 F.2d 584, 589 (2d Cir. 1988)). To state a retaliation claim, a prisoner must show (1) that he or

she engaged in constitutionally protected conduct or speech, (2) that the prison officers or officials took adverse action against him or her, and (3) that a causal connection existed between the protected speech or conduct and the adverse action. See Davis v. Goord, 320 F.3d 346, 352 (2d Cir. 2003).

As to the first element, "[i]t is well-established that the filing of a lawsuit . . . is constitutionally protected by the First Amendment." Everitt v. DeMarco, 704 F. Supp. 2d 122, 132 (D. Conn. 2010). Under the second element, adverse action constitutes retaliatory conduct that "deter[s] a similarly situated [inmate] of ordinary firmness from exercising his or her constitutional rights." Davis, 320 F.3d at 353. It is not necessary that the plaintiff himself actually be deterred. See Gill v. Pidlypchak, 389 F.3d 379, 381 (2d Cir. 2004). In order to establish the third element, the prisoner must show that the protected conduct or speech "was a substantial or motivating factor for the adverse actions taken by prison officials." Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003).

If the plaintiff can establish the three elements set forth above, the burden shifts to the defendants to demonstrate that they would have taken the same action "even in the absence of the protected conduct." Id. at 137 (2d Cir. 2003).

## III. FACTS

On July 30, 1990, having been convicted of murder, Frank Vandever was sentenced to a term of life imprisonment, suspended after 40 years. At that time, Vandever had been detained in various Department of Correction facilities since January 1989. In April 1990, while Vandever was at New Haven Community Correctional Center, he was placed on Administrative Segregation status after being found hiding in the correctional center's school at 2:00 am. Correctional officers charged him with, among other violations, attempted escape. In May 1990, Vandever was at Montville CCC. While he was being escorted out of the facility to be transported to court, it was determined that he had positioned himself in such a way as to make it appear that handcuff restraints had already been applied to him when they had not. The deputy sheriff applied handcuff restraints to Vandever, to prevent a possible escape attempt. The disciplinary committee found Vandever guilty of attempted escape.

Then, on December 31, 1991, Vandever and another inmate actually escaped from the maximum security prison in Somers. This was a high-profile incident because there has only ever been one other escape from a Connecticut Department of Correction maximum security prison. When he was finally apprehended, Vandever was charged with kidnapping, robbery, and

burglary in Connecticut while a fugitive, and also with a series of armed robberies in New Jersey, also committed while he was a fugitive.

At the time of the escape, defendant Peter Murphy was Vandever's counselor. Murphy learned at that time that Vandever and another individual had cut through bars in the kitchen area, and were then able to cut through two separate fences; he also learned about the crimes committed by Vandever in Connecticut and New Jersey. Murphy reviewed Vandever's master file at that time, including the presentence investigation report. He concluded based on the presentence investigation report that there was cause for concern that Vandever had the ability to manipulate people. Murphy also learned that Vandever had, in connection with his escape, been able to use his knowledge as a former stockbroker to manipulate staff into doing things that were helpful to his escape by giving them tips on stocks.

On October 4, 1996, the warden at Northern Correctional Institution recommended that Vandever be released from Administrative Segregation status. In his memorandum to the Director, Offender Classification and Population Management, the warden noted that defendant Murphy had made a previous recommendation that Vandever be released from Administrative Segregation status, but that recommendation had not been accepted by Murphy's superiors.

In October 1997, Vandever was being held at MacDougall CI. Correctional officers were conducting cell searches as part of an institutional shakedown. While searching Vandever's personal locker, an officer discovered a National Institute of Justice Construction bulletin titled "Stopping Escapes: Perimeter Security." The publication contained information on correctional security systems, and there were handwritten notations on the publication, specifically referring to the types of security systems utilized by the Department of Correction. After a hearing, Vandever was found guilty of possession of contraband. Vandever was placed in Punitive Segregation as a sanction.

In May 2003, Vandever was transferred to MacDougall/Walker Correctional Institution. In April 2007, defendant Murphy became the warden at MacDougall/Walker. After Murphy's arrival at MacDougall/Walker, he either encountered Vandever in situations, or learned about actions by Vandever, that caused Murphy concern on three separate occasions.

Early in Murphy's tenure at MacDougall/Walker, he was touring the facility and found Vandever in a closet in a housing unit where cleaning materials were kept; Murphy was concerned most by the fact that the door was closed behind Vandever. After that incident, Murphy talked to the unit manager and the

-6-

deputy warden of operations to make sure that such conduct would not be allowed.

On another occasion, Murphy was sitting in his office watching the video cameras that cover the facility, and he saw Vandever in one of the recreation yards walking in circles. Because he knew that Vandever was in High Security status and knew Vandever's history in terms of his escape and attempted escapes, he watched Vandever for about twenty minutes. Murphy became concerned when he did not see a staff member during that time, as it was required in the post orders that a staff member be in the recreational area when an inmate is in that area. Yet, Vandever was outside walking in the recreational area with no staff member visible. Murphy reacted by talking with the shift commander and making sure that there was a roll call announcement emphasizing the requirement that staff be physically present in the recreational area when any inmate is in that area, regardless of the inmate's status.

Subsequently, Murphy learned that Vandever was helping staff fix computers in their offices. This concerned Murphy because of his belief that Vandever is skilled at manipulating people. He ordered that Vandever be moved to another unit because he was concerned that Vandever might be becoming too close to the staff and gaining an ability to manipulate them. Murphy's order resulted in Vandever being moved from L-pod,

where some inmates were working in the kitchen, to M-pod, where inmates were typically younger, "school inmates" who were actively going to school, rather than engaging in vocational activities.  Murphy could not recall the timeframe for this incident.

In December 2003, Vandever had filed a habeas action in Connecticut Superior Court concerning statutory good time that he claimed he was owed.  Vandever had been placed on Administrative Segregation in October 1997.  In his habeas petition he claimed he had subsequently gotten the disciplinary report overturned and had it expunged from his record in 2003, so he should not have lost statutory good time of 340 days and a seven-day credit. He named as the defendant in his state habeas action the warden at the facility where he was confined, defendant Mark Strange.  During his career with the Department of Correction, Strange never had any involvement in the calculation of statutory good time and credits for any inmate, including Vandever.  In December 2007, the trial in the state habeas action had been scheduled for February 2008.

Vandever testified that on December 23, 2007, he had a verbal confrontation with Murphy.  This was a little over a month prior to Vandever's scheduled court date. Inmates must pay to make copies they want in connection with their court proceedings and Vandever had run out of money to make copies.

He asked Murphy if an exception could be made so that Vandever would be billed later. Vandever testified that Murphy indicated that no exception would be made and that Murphy would not make it any easier for Vandever to sue Murphy or his boss, Mark Strange. Vandever testified that he told Murphy that he was being unreasonable and intractable, and that Murphy looked at Vandever and told him that he thought it was time for Vandever's transfer. Murphy testified to having no recollection as to whether or not such a conversation occurred. In December 2007, however, Vandever was not suing Murphy, nor was Strange Murphy's boss. Also, Murphy testified that he was unaware that Strange was the defendant in Murphy's lawsuit.

Vandever testified that about a week later, on January 2, 2008, he was transferred from L-pod to a different unit, M-pod, which Vandever characterized as a "terror pod" where the average age was much lower. He described most of the inmates in M-pod as being 20 to 25 years old, not having their schooling and needing their GED. He testified that he lost his job as a result of the move, although he later was able to negotiate for a new job. Vandever testified that around January 4th, he was informed that his ability to attend monthly meetings of the book club was being revoked; he had been attending those meetings in the school area for about a year. He further testified that on or around January 7th, he was told that he would not be allowed

to attend Bible study, which he had been attending in the school area for the prior five years. Vandever testified that on the same day he was informed that his ability to access the library in the school area had been revoked. He testified that in each instance he was informed that the change was at the direction of defendant Murphy.

Vandever did not exhaust his administrative remedies with respect to any of these orders.

On February 8, 2008, Correction Officer Zimmitti was approached by an inmate, who remains unidentified. That inmate stated that he was in line to become a trash run worker and that Vandever had been asking questions about the operation of the trash run and loading dock. Vandever wanted the other inmate to tell him about the procedures at the trash run and loading dock. CO Zimmitti reported this information to Captain Beaudry.

Beaudry, knowing that Vandever was on High Security status due to a previous escape, instructed Lieutenant Allen to place Vandever in the Restricted Housing Unit pending an investigation. Vandever was interviewed by Captain Beaudry and a lieutenant. Vandever commented during the interview that he thought his placement in the Restrictive Housing Unit was retaliation for him pursuing a court action against the Department of Correction and its staff members. Beaudry also reported that Vandever became upset when he was moved from L-pod

to M-pod because he was comfortable in L-pod and that Vandever commented that he did not like it in M-pod because of all the young people there.

When Vandever was moved to the Restricted Housing Unit, his property and mattress were collected by Correction Officer Stolfi and taken to the Intelligence Office to be searched.  On February 20, Stolfi was conducting a search of Vandever's belongings when he found several items considered to be contraband:

1.  2 Rand McNally road atlas's (North America, World).
2.  2 Sharp scientific calculators - Advanced DAL model numbers 506L and 506V.
3.  1 small spool of dental floss.
4.  1 Word Perfect for Windows 5.1 text book.
5.  1 Lady's lip gloss - Gold colored.
6.  1 Virgin airlines boarding pass - item found in magazines for promotional / add purposes.

March 21, 2008 Report of CO Mark Stolfi.

The reason for correctional officials to be concerned about prisoners having road atlases and an airline boarding pass is apparent -- such items might be used by an inmate who has gotten free of the facility to make good his escape.  Correctional officials have a concern about dental floss, which not only could be used as a weapon, but also possibly could be used as a cutting tool.  As to the gold-colored lip gloss, correctional

officials have a concern that like paint, because it could be used to cover something, it could be used to hide the cutting of a bar or damage to a wall.

On March 20, 2008, defendant Murphy wrote to the Director, Offender Classification and Population Management, recommending that Vandever be placed in Administrative Segregation status because Correction Officer Zimmitti had received information that Vandever was asking about the operations of the loading dock and trash run and because of the contraband found when Vandever's belongings were searched.  Murphy concluded that Vandever was a threat to the safety and security of the institution based on his escape history, his High Security status, and the fact that he had been inquiring about the operations of the loading dock and trash run.

Vandever had started his state habeas trial on February 4, 2008, but the court adjourned the trial to be resumed on March 3, 2008.  Thus, Vandever was placed in the Restrictive Housing Unit four days after the state habeas trial began and was temporarily adjourned.  Because all of Vandever's property had been taken to the Intelligence Office to be searched, he did not have access to his legal papers.  Vandever requested that his legal papers be returned to him so that he could prepare for the March 3, 2008 resumption of his trial.  He was told that those papers would not be returned until the inspection had been

completed, and the inspection would take 14 days. On February 20, 2008, Vandever was given some of his files. On February 25, 2008, Vandever was transferred to Northern Correctional Institution, but he did not receive the remainder of his legal papers there. Thus, when his state habeas trial reconvened on March 3, 2008, Vandever did not have all of his legal papers. He testified that this adversely affected his ability to litigate that case. For example, his witness subpoenas were rejected due to improper form, but he did not learn about that until March 6, 2008.

A hearing on the recommendation that Vandever be placed on Administrative Segregation status was held on March 13, 2008 and the hearing officer did not order that Vandever be placed on Administrative Segregation status.

On June 12, 2008, Vandever's habeas petition was denied, and he is currently appealing.

**IV.   ANALYSIS**

The parties agree that Vandever engaged in activity protected by the First Amendment, namely pursuing his habeas action in state court against defendant Strange. While Vandever testified to a number of actions that were taken against him by Department of Correction personnel, he claims only two of those actions as the basis for this claim of an adverse action against him in violation of his Constitutional rights: having his

ability to go to the library revoked and being assigned to the Restrictive Housing Unit. He testified that each adversely affected his ability to prosecute his lawsuit. The third element, the existence of a causal connection between protected speech or conduct and the adverse action, is contested.

Defendant Strange is entitled to judgment on Vandever's claim because Vandever has failed to prove that defendant Strange had any involvement in any of the incidents mentioned in this case. Defendant Murphy is entitled to judgment on Vandever's claim because Vandever has failed to prove the third element of his claim, namely that a causal connection existed between protected speech or conduct and an adverse action. In addition, the defendants have proven their affirmative defense that the plaintiff did not exhaust his administrative remedies.

With respect to defendant Strange, it is well settled that, "in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, inter alia, the defendant's personal involvement in the alleged constitutional deprivation." Grullon v. City of New Haven, 720 F.3d 133, 138 (2d Cir. 2013). Strange was named in Vandever's 2003 state habeas petition only because he was the warden of the institution at which Vandever was being held at the time the petition was filed. That is his only involvement in this case.

Although Strange knows Murphy, he has never spoken to Murphy about Vandever or the incidents at issue here. The Department of Correction operates based on a chain of command. The Operations Division has a North District and a South District. There is a District Administrator for each of them. At the time of the incidents at issue in this case, Strange was the District Administrator for the South District. Nine wardens reported to him, but not the warden of MacDougall/Walker. MacDougall/Walker was in the North District, and the District Administrator there was Wayne Choinski. Moreover, on his witness list for his state habeas trial, Vandever lists four witnesses, all of whom were employees of the Department of Correction. However, Strange is not listed. Vandever has produced no evidence that shows personal involvement by Strange in any of the incidents at issue in this case.

As to defendant Murphy, Vandever has failed to show that protected conduct or speech was a substantial or motivating factor for any adverse action taken by prison officials. At issue here are the January 7, 2008 order that Vandever's ability to go to the library in the school area was revoked and Vandever being sent to the Restrictive Housing Unit on February 8, 2008.

With respect to the order that Vandever could no longer go to the library in the school area, the only evidence of a causal connection that the plaintiff produces is the fact that his

conversation with Murphy occurred on December 23rd and on January 7th he was told that he could no longer go to the library in the school area.  On the other hand, the topic of the conversation between Vandever and Murphy on December 23rd was whether the policy that an inmate must pay for copies at the time they are made would be waived for Vandever.  There is no evidence that the specifics of the court proceeding were discussed or that Murphy knew what the lawsuit was about.  In any event, the lawsuit did not involve Murphy and it did not involve Murphy's "boss", as Vandever has asserted.  Rather, the state habeas action was about Vandever's loss of statutory good time and seven days of credit -- something in which Murphy had had no involvement.  Thus, there is nothing about Vandever's state habeas action that one would expect to be upsetting or annoying to a person in Murphy's position.  Moreover, it appears that from Murphy's perspective there is nothing especially noteworthy about lawsuits in general, as he has been the defendant in 75 cases in this District alone.  Finally, Murphy does not appear to have animus toward Vandever -- Murphy recommended in 1996 that Vandever be released from Administrative Segregation status, but the recommendation was not accepted.

In addition, the decision that Vandever could no longer go to the library in the school area, as well as the decisions that

-16-

he could not attend the monthly book club meetings in the school area and could not attend Bible study in the school area, all came on the heels of his being moved from L-pod to M-pod. While Murphy could not remember the specific timeframe during which his concern about Vandever putting himself in a position to manipulate staff by helping them fix computers in their offices arose, he was clear that that was the incident that led to Murphy's directing that Vandever be moved from L-pod to M-pod. One of the attempted escapes with which Vandever had been charged, namely the April 1990 incident, involved him being found hiding in the school at 2:00 am. Thus, it is reasonable that there would be a heightened sensitivity to Vandever being in a school area at a time when there is a concern about him planning another escape.

Thus, the court concludes that the concern that Murphy had about Vandever in January 2008 was not related to Vandever's pending state habeas action and the upcoming trial, but rather was related to the fact that Vandever was a High Security status inmate who previously escaped and might be attempting to lay the groundwork for another escape.

The court reaches the same conclusion with respect to Vandever being sent to the Restrictive Housing Unit on February 8th. As an initial matter, Captain Beaudry, not Warden Murphy, was the person who directed that Vandever be placed in the

Restrictive Housing Unit.  Beaudry had good cause to do so based on the report that had been received concerning Vandever attempting to obtain information about how the loading dock and trash run operated.  Murphy had no proper reason to overturn Beaudry's decision given Vandever's history at prior institutions, which history was known by Murphy; Murphy's concerns about Vandever based on incidents that had occurred during Murphy's tenure as the warden at MacDougall/Walker; and the specific details of the report that had been received by Captain Beaudry.  Moreover, once Murphy learned about the results of the search of Vandever's property, he was entirely justified in recommending that Vandever be placed on Administrative Segregation status.  Particularly in light of Vandever's history with respect to escape and attempted escape, there was cause to be concerned about the use to which Vandever might put the items of contraband that had been found in his cell.  Thus, the court concludes that Vandever's pending state habeas action and the upcoming trial was not a factor, much less a substantial or motivating factor, for any action taken by Murphy.

Finally, the defendants have shown that Vandever did not file any grievance during the period from December 2007 through August 2009.  Therefore, even had Vandever been able to meet his burden of proving the elements of his claim, the defendants

would prevail on their affirmative defense that Vandever failed to exhaust his administrative remedies.

**IV. CONCLUSION**

Accordingly, judgment shall enter in favor of defendants Peter Murphy and Mark Strange on plaintiff Frank Vandever's Section 1983 First Amendment retaliation claim. In addition, the docket shall reflect that Section 1983 Equal Protection and Due Process claims against all defendants were dismissed with prejudice.

The Clerk shall close this case.

It is so ordered.

Dated this 23rd day of March 2015, at Hartford, Connecticut.

/s/
Alvin W. Thompson
United States District Judge